13-2705-cv
*EEOC v. Port Authority of N.Y. and N.J.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2013

(Argued: May 27, 2014          Decided: September 29, 2014)

No. 13-2705-cv
_____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant*,

- v. -

PORT AUTHORITY OF NEW YORK AND NEW JERSEY,

*Defendant-Appellee*.

_____

Before:          LIVINGSTON and DRONEY, *Circuit Judges*; CHEN, *District Judge*.[*]

The Equal Employment Opportunity Commission ("EEOC") appeals from a judgment on the pleadings of the United States District Court for the Southern District of New York (Buchwald, *J.*), dismissing the EEOC's complaint against the Port Authority of New York and New Jersey ("Port Authority"), brought pursuant to the Equal Pay Act of 1963, 29 U.S.C. § 206(d).  The district court concluded that the EEOC failed to allege sufficient facts to state a plausible claim that female and male attorneys at the Port Authority performed "equal work" despite receiving

---

[*] The Honorable Pamela K. Chen, United States District Judge for the Eastern District of New York, sitting by designation.

unequal pay. Because the EEOC did not allege any facts supporting a comparison between the attorneys' actual job duties, thereby precluding a reasonable inference that the attorneys performed "equal work," we AFFIRM.

> JULIE L. GANTZ (P. David Lopez, Lorraine C. Davis, and Daniel T. Vail, *on the brief*), Equal Employment Opportunity Commission, Washington, D.C., *for Plaintiff-Appellant*.

> ROSEMARY ALITO (George Peter Barbatsuly, *on the brief*), K&L Gates LLP, Newark, New Jersey, *for Defendant-Appellee*.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Following a three-year investigation, the Equal Employment Opportunity Commission ("EEOC") filed suit against the Port Authority of New York and New Jersey ("Port Authority"), asserting that the Port Authority paid its female nonsupervisory attorneys at a lesser rate than their male counterparts for "equal work," in violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d).[1] To support its claim that the attorneys performed "equal work," the EEOC pled broad facts concerning the attorneys' jobs (such as that the attorneys all have "the same professional degree," work "under time pressures and deadlines," and utilize both

---

[1] The EEOC also asserted claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623, but the parties stipulated to the dismissal of those claims with prejudice and we do not consider them in this appeal.

"analytical" and "legal" skills) that are generalizable to virtually all practicing attorneys. The EEOC did not, however, plead *any* facts particular to the attorneys' actual job duties. Instead, the EEOC proceeded under a theory that, at the Port Authority, "an attorney is an attorney is an attorney" – that is, that the dozens of nonsupervisory attorneys working at the Port Authority during the relevant period (in practice areas ranging from Contracts to Maritime and Aviation, and from Labor Relations to Workers' Compensation) were all doing equal work – and that, as a result, the EEOC was not required to detail similarities between the attorneys' job duties (or other factual matter as to the content of the attorneys' jobs) to state a plausible EPA claim.

Holding to the contrary, the district court granted the Port Authority's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See EEOC v. Port Auth. of N.Y. & N.J.*, No. 10 Civ. 7462 (NRB), 2012 WL 1758128, at *6 (S.D.N.Y. May 17, 2012). We conclude that the EEOC's failure to allege *any* facts concerning the attorneys' actual job duties deprives the Court of any basis from which to draw a reasonable inference that the attorneys performed "equal work,"

3

the touchstone of an EPA claim. Accordingly, the complaint failed to state a plausible claim for relief. We therefore affirm the judgment of the district court.

## BACKGROUND[2]

In 2007, spurred by a charge of discrimination filed by a female attorney in the Port Authority's law department, the EEOC began an investigation into the Port Authority's pay practices. The Port Authority states that it cooperated with the investigation, a characterization the EEOC does not contest. In 2010, the EEOC issued a determination letter announcing its conclusion that the Port Authority had violated the EPA by paying its female attorneys at a lesser rate than its male attorneys. Specifically, the EEOC asserted that a comparison of the salaries of "similarly situated attorneys" revealed that "males were earning more than their female comparators, and in most instances by a wide margin." Moreover, according to the EEOC, "[a] review of the evidence indicate[d] that the pay disparity [was] not explained by . . . factors other than sex." The EEOC did not identify additional claimants, any comparators, or facts supporting its conclusion that the attorneys at

---

[2] The following facts are taken from the EEOC's complaint and incorporated interrogatory responses, "which we assume to be true and construe in the light most favorable to the plaintiff." *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 118 (2d Cir. 2013). Where necessary for context, this section also refers to the district court's order dismissing the EEOC's complaint, as well as transcripts of the proceedings before the district court.

issue were "similarly situated." The determination letter offered conciliation discussions, which the Port Authority declined. The EEOC then initiated this suit.

The EEOC's complaint alleges, essentially in sum, that the Port Authority violated the EPA because:

> The Port Authority has paid and continues to pay wages to its non-supervisory female attorneys at rates less than the rates paid to male employees in the same establishments for substantially equal work for jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

J.A. 11-12. The complaint charges that while nonsupervisory attorneys share the same job code, female attorneys are paid salaries "less than male attorneys having the same job code," and that "[t]he disparity in pay cannot be attributed to factors other than sex." J.A. 12. The Port Authority answered, and at a subsequent conference, the district court suggested its skepticism that the EEOC had adequately pled a claim, despite its access to evidence gathered during the three-year investigation. Accordingly, the district court ordered the Port Authority to serve and the EEOC to respond to interrogatories to elucidate "what [the EEOC's] position is."

5

In its responses to the Port Authority's interrogatories, the EEOC identified fourteen female nonsupervisory attorneys as claimants as well as a host of alleged comparators for each claimant, with the claimants and comparators presented in a table comparing their dates of bar admission, dates of service with the Port Authority, salaries, and divisions. The EEOC asserted that the claimants' and comparators' jobs were substantially similar based on broad allegations that, *inter alia*, the attorneys served the same client, the Port Authority; there were no job descriptions differentiating between jobs; and the attorneys' jobs all demanded a professional demeanor, compliance with rules of professional conduct, and familiarity with legal documents. The EEOC also provided allegations specific to the Port Authority to support its contention that the Port Authority understood the claimants' and comparators' jobs to be similar, including that the attorneys shared the same job code; the Port Authority's attorney "maturity curve" – or chart for determining salaries – did not differentiate between practice areas or divisions when setting upper and lower limits for salaries, but instead relied on years of legal experience; the Port Authority used the same criteria – such as "decision making" and "interpersonal skills" – to evaluate the performance of all its nonsupervisory

6

attorneys; and the Port Authority did not invariably separate work by practice area, but instead assigned work across divisions, and sometimes moved attorneys between divisions or into consolidated divisions.

Finally, the EEOC asserted that the claimants' and comparators' jobs demanded substantially equal skill, effort, and responsibility, and were performed under similar working conditions – the statutory criteria underlying the equal work inquiry. As to skill, the EEOC alleged that the attorneys' jobs "do not require different experience, training, education, or ability," and instead require:

> the same professional degree and admission to the bar[;] . . . problem-solving and analytical skills to identify, research, analyze, evaluate, and resolve legal issues clearly and persuasively[;] . . . the use of professional judgment and legal skills to draft, review, and implement legal documents[;] . . . the ability to understand and comply with department, agency, and legal instructions and procedures[;] . . . the ability to consult with and provide legal advice to the same client, the Port Authority[;] . . . the ability to interact and consult with outside legal staff or other Port Authority attorneys on client matters[;] . . . the same degree of diligence and persistence[; and] . . . the ability to manage time, meet deadlines, and prioritize assignments.

J.A. 60. As to effort, the EEOC alleged, without elaboration, that the attorneys' jobs:

> require the same physical or mental exertion[;] . . . are performed under time pressures and deadlines[; and] . . . require the same problem-solving and analytical efforts, the same efforts to draft, review, and implement legal documents, the same efforts to consult with and

provide legal advice to the Port Authority, and the same efforts to interact and consult with outside legal staff or other Port Authority attorneys on client matters.

J.A. 63-64. Concerning responsibility, the EEOC alleged that:

[C]laimants['] and comparators' jobs require the same degree of accountability and supervision[;] . . . are all non-supervisory and have substantially the same reporting structure and the same level of supervision[;] . . . are of equal significance to the [Port Authority; and] . . . require that the claimants and comparators be able to respond to and act on behalf of the General Counsel. All of the jobs are responsible for decisions that affect the Port Authority's rights and liabilities. The jobs require independent judgment and discretion subject to the same level of oversight and supervision[;] . . . require that supervisory and management staff remains informed of the status of matters[; and] . . . require the same responsibility to provide advice and respond to and represent the interests of the same client, the Port Authority.

J.A. 64-65. Last, as to working conditions, the EEOC alleged that:

[A]ll of the claimants and comparators worked out of the same office, in a legal setting customarily used by attorneys, and none of the claimants or comparators were regularly exposed to different physical surroundings, including different elements such as toxic chemicals or fumes, or physical hazards in performing their job duties.

J.A. 66. In sum – stating nothing about the actual *content* of the work done by the

dozens of attorneys either within or across practice areas at the Port Authority – the

EEOC's responses alleged, in conclusory fashion, that "all of the non-supervisory

8

attorney jobs in [the Port Authority's] law department are substantially equivalent and require the same skill, effort, and responsibility." J.A. 69.

Following the EEOC's filing of its responses, the Port Authority requested leave to move for judgment on the pleadings pursuant to Rule 12(c). At a conference on that request, the district court sought to confirm the basis of the EEOC's claim. First, the court expressed its confusion concerning the EEOC's selection of comparators, which it characterized as, "frankly, random." By way of example, the court noted that the EEOC had compared a female claimant who was admitted to the bar in 1978, joined the Port Authority in 1985, worked for the "Real Estate, Leases, and Environmental Law" department, and earned $145,262, with a male comparator who was admitted to the bar in 1962, joined the Port Authority in 1994, worked for the "Commercial Litigation" department, and made $147,498 – a difference of sixteen years legal experience and approximately $2,000 salary. The EEOC defended its selection on the ground that each claimant and her comparators had no "more than ten years[']" difference in combined years of bar admission and service with the Port Authority. In the court's example, then, the male attorney's additional years of legal experience were offset by the female attorney's additional

9

years at the Port Authority. Finding that the comparisons nonetheless elided "extraordinary difference[s]" between the attorneys, the court inquired whether the EEOC's theory for its claim was that the attorneys' jobs were equal "regardless of the[ir] work," that is, whether the EEOC's theory was that "an attorney is an attorney is an attorney." The EEOC agreed that it was, save for the caveat that the theory – for purposes of this claim – was limited to the Port Authority. In light of the EEOC's "affirmative position that [Port Authority attorneys] are all the same," the court granted the Port Authority leave to file its motion, which the Port Authority duly filed on September 28, 2011.

On the basis of the pleadings and the EEOC's interrogatory responses, which were treated as a "functional amendment" to the EEOC's complaint, the district court thereafter granted judgment in favor of the Port Authority. *Port Auth. of N.Y. & N.J.*, 2012 WL 1758128, at *1 & n.2. In so ruling, the court first held that the EEOC's complaint, "[s]tanding alone," was "clearly insufficiently pleaded" as it did "nothing more than track the language of the statue." *Id.* at *4. The court next held that the EEOC's interrogatory responses successfully pleaded that the claimants' and comparators' jobs entailed equal levels of responsibility, given the allegation that the

10

attorneys were all "nonsupervisory" and worked under "the same reporting structure and . . . level of supervision." *Id.* However, the court also determined that the responses failed adequately to allege that the attorneys' jobs required equal skill and effort, given that the EEOC's reliance on "broad generalities about attorneys in general" – rather than "say[ing] anything about [the] Port Authority's attorneys in particular" – described the work of "virtually any practicing lawyer" and thus did not amount to "a true comparison of the content of the jobs at issue." *Id.*

Finally, the district court deemed the EEOC's "an attorney is an attorney is an attorney" theory insufficient to support its claim. The court acknowledged that the EEOC had alleged four facts suggesting that the Port Authority treated the attorneys' positions similarly: the claimants and comparators had the same job code; were paid within the bounds of an attorney "maturity curve" based on years of legal experience; were evaluated according to the same performance criteria; and were not inflexibly limited to distinct legal divisions. *Id.* at *5. But the court concluded that these allegations did not touch upon the attorneys' *actual* job duties and thus could not give rise to an inference that the attorneys' jobs required "substantially equal" work. To reach this conclusion, the court first held that the shared job codes were

11

not entitled "any weight" because titles or codes "are not a reflection of job content." *Id.* Similarly, the court deemed the use of identical performance criteria to be insignificant given that the "blandly generic" criteria the Port Authority employed could be "used to evaluate different employees on different scales." *Id.* Next, the court found that the movement of attorneys between divisions was inconsequential, as transfers would "only be asked of those who have the ability to satisfy the requirements" and that the consolidation of divisions was beside the point as it did not "speak to the actual content of the jobs." *Id.* Last, the court found that the "maturity curve's" reliance on years of legal experience to set permissible salary ranges compelled the conclusion that factors "other" than years of legal experience informed the selection of salaries within the predetermined ranges. *Id.* at *6. As such, the court declared that the EEOC's "bald assertion" that the "other" factor must be sex ignored not only potential differences in the attorneys' job duties but also the "multitude of legitimate factors" that may have informed the attorneys' salaries. *Id.*

The district court concluded that it "strains credulity to argue that [the] Port Authority, which does not set wages based on a lockstep scale, does not factor into

its pay decisions the kind and quality of work its attorneys perform." *Id.* Because the EEOC's "allegations as a whole simply do not rise to the requisite level of facial plausibility," the court granted judgment in favor of the Port Authority and dismissed the EEOC's complaint. *Id.* This appeal followed.

## DISCUSSION

**A.  Legal Standard**

We review *de novo* a district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(c), employing "the same . . . standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)." *Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 529 (2d Cir. 2006) (internal quotation marks omitted).  Thus, we accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

The pleading standard we employ in reviewing discrimination complaints is somewhat less settled, however.  In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court held that an employment discrimination complaint need not set forth "specific facts establishing a prima facie case of discrimination" to survive a

13

motion to dismiss and, instead, was subject only to the minimal standard required by Federal Rule of Civil Procedure 8, that a complaint provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *id.* at 508 (quoting Fed. R. Civ. P. 8(a)(2)), such that it would "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests,'" *id.* at 512 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). At the time, application of Rule 8 was governed by the standard set forth in *Conley v. Gibson*, which instructs that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46.

That standard was abandoned by the Court's later rulings in *Twombly* and *Iqbal*, which clarified the proper Rule 8 standard as being whether a complaint alleged "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), such that a court could "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Contrary to *Conley*'s "no-set-of-facts" standard, which requires only that a complaint not *preclude* the viability of claims,

*Twombly* and *Iqbal* require that a complaint *support* the viability of its claims by pleading sufficient nonconclusory factual matter to set forth a claim that is plausible on its face. *See Twombly*, 550 U.S. at 555 (noting that a complaint offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do"); *Iqbal*, 556 U.S. at 678 (noting that a complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"); *see also EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (comparing *Conley* with *Twombly*). In "retiring" *Conley*, *Twombly* reaffirmed *Swierkiewicz*. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 228 n.10 (2d Cir. 2014). However, it did so only insofar as *Swierkiewicz* "did not change the law of pleading, but simply re-emphasized that the use of a heightened pleading standard for [discrimination] cases was contrary to the Federal Rules' structure of liberal pleading requirements." *Twombly*, 550 U.S. at 570 (internal quotation marks and ellipsis omitted).

Since *Twombly* and *Iqbal*, *Swierkiewicz*'s continued vitality has been an open question in this Circuit. *See, e.g.*, *Daikin Am. Inc.*, 756 F.3d at 228 & n.10. Specifically, uncertainty lingered as to whether *Twombly* and *Iqbal* overruled *Swierkiewicz* entirely, or whether *Swierkiewicz* survives only to the extent that it bars the application of a

15

pleading standard to discrimination claims that is heightened beyond *Twombly*'s and *Iqbal*'s demand for facial plausibility. We reject the first proposition. *Twombly*'s endorsement of *Swierkiewicz* mandates, at a minimum, that *Swierkiewicz*'s rejection of a heightened pleading standard in discrimination cases remains valid. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 & n.3 (1st Cir. 2013) (holding that *Swierkiewicz*'s "discussion of the disconnect between the prima facie case and the rules of pleading" remains "good law" after *Twombly* and *Iqbal*).

Instead, along with several of our sister circuits, we recognize that *Swierkiewicz* has continuing viability, as modified by *Twombly* and *Iqbal*. *Swierkiewicz* held only that discrimination complaints are subject to the requirements of Rule 8, a rule now guided by the Court's more recent holdings on the pleading standard. *See Rodriguez-Reyes*, 711 F.3d at 54 n.3 (stating that *Swierkiewicz*'s reliance on *Conley* "to describe the pleading standard . . . is no longer viable"); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (noting that *Swierkiewicz* was "repudiated by both *Twombly* and *Iqbal* . . . at least insofar as [*Swierkiewicz*] concerns pleading requirements and relies on *Conley*"). As such, we conclude that, while a discrimination complaint need not allege facts establishing each element of a prima

facie case of discrimination to survive a motion to dismiss, *see Swierkiewicz*, 534 U.S. at 510 (noting that the prima facie case requirement is an evidentiary standard), it must at a minimum assert nonconclusory factual matter sufficient to "'nudge[] [its] claims' . . . 'across the line from conceivable to plausible'" to proceed, *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570). With the proper standard set out, we turn to the adequacy of the EEOC's complaint and interrogatory responses.

**B. The EPA Claim**

Congress passed the EPA in 1963 "to legislate out of existence a long-held, but outmoded societal view that a man should be paid more than a woman for the same work." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999). From the first, the EPA concerned equal pay for – emphatically – *equal* work. To that end, Congress rejected statutory language encompassing "comparable work" to instead mandate equal pay for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); *see Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir. 1973) (quoting 109 Cong. Rec. 9197-98 (1963)). Thus, to prove a violation of the EPA, a plaintiff must demonstrate that "[(1)] the employer pays different wages to

employees of the opposite sex; [(2)] the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and [(3)] the jobs are performed under similar working conditions." *Belfi*, 191 F.3d at 135 (internal quotation marks omitted).

While the equal work inquiry does not demand evidence that a plaintiff's job is "identical" to a higher-paid position, the standard is nonetheless demanding, requiring evidence that the jobs compared are "substantially equal." *See Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001). To satisfy this standard, a plaintiff must establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications. *See, e.g.*, *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). This focus on job content has been a constant in the context of the EPA. For example, the EEOC's own regulations provide that "equal work" under the EPA is established not by reference to "job classifications or titles but . . . rather [by] actual job requirements and performance." 29 C.F.R. § 1620.13(e). Similarly, the EEOC's Compliance Manual states that "[j]ob *content* . . . determines the equality of jobs," and "whether two jobs are substantially equal"

18

turns on "whether the jobs have the same 'common core' of tasks." EEOC Compliance Manual § 10-IV(E)(2) (2000).

The EEOC's regulations also define the statutory criteria underlying the equal work inquiry – equal skill, effort, and responsibility – by reference to actual job content. For example, equal skill is defined as including "such factors as experience, training, education, and ability," as measured "in terms of *the performance requirements of the job*" at issue. 29 C.F.R. § 1620.15(a) (emphasis added). Equal effort, by turn, looks to "the measurement of the physical or mental exertion *needed for the performance of a job*." *Id.* § 1620.16(a) (emphasis added). And equal responsibility turns on "the degree of accountability *required in the performance of the job*, with emphasis on the importance of the *job obligation*." *Id.* § 1620.17(a) (emphasis added). In addition, the regulations illustrate these definitions by reference to fact-intensive examples that emphasize the centrality of job content to the equal work inquiry, such as supermarket employees who are either required to move heavy boxes or reorganize small merchandise, and sales clerks who are either entrusted to determine whether to accept personal checks or who are not so empowered. *See id.* §§ 1620.15-17.

This Court has similarly focused on the congruity and equality of actual job content between the plaintiff and comparator in weighing EPA claims. In *Tomka v. Seiler Corporation*, we stated that "job content and not job title or description" is the central concern of an EPA claim. 66 F.3d at 1310. Given this precept, we affirmed summary judgment in favor of a defendant on an EPA claim as to two of a plaintiff's better-paid male co-workers, because the plaintiff had "set forth no specific facts to indicate that she performed substantially equal work" to those co-workers. *Id.* However, we vacated the judgment and remanded the claim insofar as it concerned four other better-paid male co-workers, because the evidence demonstrated that the plaintiff's and her co-workers' job "duties" were "identical" or "overlap[ped]." *Id.* at 1311. In *Fisher v. Vassar College*, we first vacated and then, sitting en banc, reversed a judgment in favor of the plaintiff pressing an EPA claim – despite the fact that she and her better-paid male co-worker were both professors at Vassar – because the plaintiff "never introduced evidence establishing that she and [and her co-worker] performed equivalent work." 70 F.3d 1420, 1452 (2d Cir. 1995), *reheard en banc on other grounds*, 114 F.3d 1332 (2d Cir. 1997), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). And tellingly, in

*Lavin-McEleney v. Marist College*, we affirmed a judgment in favor of a professor-plaintiff bringing a similar claim – despite the fact that the chosen comparator and other statistical evidence compared salaries across departments – because the plaintiff offered "substantial evidence" that the comparisons "isolate[d] comparable positions [to] accurately capture[] equality of skill, effort, and responsibility." 239 F.3d at 481; *see also Byrne v. Telesector Res. Grp., Inc.*, 339 F. App'x 13, 16 (2d Cir. 2009) (summary order) (affirming summary judgment in favor of defendant, despite fact that plaintiff and better-paid male co-workers had same job title, because "[f]or purposes of an equal pay claim . . . a finding of substantial equality must be based on actual job content").

To be sure, the bulk of these cases concerned whether the plaintiffs had proven their EPA claims following summary judgment or trial, not whether the plaintiffs had adequately pleaded their claims. Nonetheless, these cases as well as the EEOC's regulations and Compliance Manual stand for a common principle: a successful EPA claim depends on the comparison of actual job content; broad generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice. At the pleading stage, then, a

plausible EPA claim must include "sufficient factual matter, accepted as true" to permit "the reasonable inference" that the relevant employees' job *content* was "substantially equal." *See Iqbal*, 556 U.S. at 678. Such factual allegations are necessary to provide "fair notice [to the defendant] of the basis for [the plaintiff's] claims." *Swierkiewicz*, 534 U.S. at 514. Yet, despite a three-year investigation conducted with the Port Authority's cooperation, the EEOC's complaint and incorporated interrogatory responses rely almost entirely on broad generalizations drawn from job titles and divisions, and supplemented only by the unsupported assertion that all Port Authority nonsupervisory attorneys had the same job, to support its "substantially equal" work claim. As such, the EEOC's complaint was rightly dismissed.

First, the EEOC alleges in its complaint only that the Port Authority paid its female nonsupervisory attorneys less than its male nonsupervisory attorneys "for substantially equal work," that these attorneys had "the same job code," and that the disparity in pay "cannot be attributed to factors other than sex." The EEOC's bald recitation of the elements of an EPA claim and its assertion that the attorneys at issue held "the same job code" are plainly insufficient to support a claim under the EPA.

22

*See Twombly*, 550 U.S. at 555 (deeming a "formulaic recitation of the elements of a cause of action" insufficient to survive a motion to dismiss); *Tomka*, 66 F.3d at 1310 (rejecting reliance on "job title or description" alone under the EPA).

Next, while the interrogatory responses provide some additional content to the EEOC's complaint, these responses too are insufficient to support a "reasonable inference" of "substantially equal" work or to provide the Port Authority notice of the grounds for the EEOC's claim. *See Iqbal*, 556 U.S. at 678; *Swierkiewicz*, 534 U.S. at 514. As outlined above, the EEOC alleged that the Port Authority required all of its nonsupervisory attorneys to have similar "experience, training, education, or ability," bar admission, and the capacity to call upon "problem-solving and analytical skills" as well as "professional judgment." However, such bland abstractions – untethered from allegations regarding Port Authority attorneys' *actual* job duties – say nothing about whether the attorneys were required to perform "substantially equal" work. Thus, the EEOC's complaint provides no guidance as to whether the attorneys handled complex commercial matters or minor slip-and-falls, negotiated sophisticated lease and financing arrangements or responded to employee complaints, conducted research for briefs or drafted multimillion-dollar

contracts. The EEOC asserts that such allegations are unnecessary because "all lawyers perform the same or similar function(s)" and that "most legal jobs involve the same 'skill.'" Appellant's Br. at 29. But accepting such a sweeping generalization as adequate to state a claim under the EPA might permit lawsuits against any law firm – or, conceivably, any type of employer – that does not employ a lockstep pay model. Without more, these facts cannot be read to raise the EEOC's "substantially equal" work claim "above the speculative level." *See Twombly*, 550 U.S. at 555.

Nor does the EEOC's table purporting to compare claimants and comparators bolster its claim. As the district court noted, the comparisons drawn appear superficially random, and rightly so: as the EEOC acknowledged, the table simply juxtaposes claimants and comparators whose "combined" bar admission and service dates are separated by no "more than ten years" – a full decade of difference in experience.[3] That the EEOC faulted the Port Authority for paying a male attorney

---

[3] This ten-year range is not the table's only shortcoming. The EEOC nowhere clarifies whether the attorneys cited in the table always worked in the same divisions since joining the Port Authority or even whether they have always worked in *legal* positions. For instance, the table indicates that several attorneys joined the Port Authority years before their admission to the bar.

only $2,000 more in salary than his female co-worker with sixteen less years of legal experience only serves to underscore the paucity of support offered by the EEOC's selection of comparators. Moreover, the table includes multiple *male* attorneys who were paid more than their male co-workers with similar qualifications, undermining the EEOC's contention that sex alone informed the alleged pay disparities at the Port Authority. And while twelve of the EEOC's 338 identified pairs of claimants shared similar bar admission dates and years of service and worked in the same division at the same time, this allegation fails to demonstrate that all Port Authority attorneys perform "substantially equal" work.

Finally, the EEOC's theory that "an attorney is an attorney is an attorney" does nothing to assist its claim. As detailed above, such broad generalizations based on mere job classifications are not cognizable under the EPA. And while it is conceivable that the EEOC might have alleged facts supporting its contention that the attorneys' *job duties* were treated interchangeably, potentially giving rise to an inference that they performed "substantially equal" work, no such specific allegations can be found in the EEOC's complaint. *See Beck-Wilson v. Principi*, 441 F.3d 353, 360-61 (6th Cir. 2006) (holding that evidence that jobs were "fungible"

25

could "support a prima facie case under the EPA" where plaintiffs established that defendant hospital "employed [predominantly female nurse practitioners] and [predominantly male physician assistants] interchangeably" and that "the basic duties of both [of those] jobs at the [hospital] c[ould] be performed by either [nurse practitioners] or [physician assistants]"). Rather, the EEOC's more particularized allegations – that Port Authority attorneys had the same job code; were evaluated according to the same broad criteria; were paid according to the same "maturity curve"; and were not limited to distinct legal divisions – at most demonstrate that Port Authority attorneys were subject to the same human resources policies.

Job codes, again, say nothing of actual job duties and are thus peripheral to an EPA claim. The use of identical evaluative criteria such as "project management," "communication," "flexibility and adaptability," and "attendance," moreover, speaks only to the breadth of the standards used, not to whether the attorneys subject to evaluation face varying workplace demands. And, as the district court noted, the "maturity curve's" reliance on years of legal experience to set salary *ranges* supports only the inference that factors *other than* legal experience – be it job content or any number of other criteria – informed the determination of

26

salaries within the curve. Finally, the transfer of attorneys between divisions supports the inference that some attorneys had multidisciplinary skill sets, not that all Port Authority attorneys were required to be so skilled. All told, the EEOC's allegations supporting its "an attorney is an attorney is an attorney" theory do nothing to elucidate the skills or effort demanded of the Port Authority's many attorneys and, thus, do nothing to support the EEOC's claim.

Simply put, the EEOC has not alleged a single nonconclusory fact supporting its assertion that the claimants' and comparators' jobs required "substantially equal" skill and effort. That the EEOC's failure to include such factual allegations followed a three-year investigation into the Port Authority's pay practices – an investigation conducted with the Port Authority's cooperation – is of some note. The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Here, the EEOC had ready access to Port Authority documents and employees, including to the claimants asserting EPA violations, yet the EEOC failed – in fact, repeatedly rejected the need – to allege any factual basis for inferring that the attorneys at issue performed

27

"substantially equal" work. *See Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 723 (2d Cir. 2013) (concluding that the plaintiffs' "imprecise pleading is particularly inappropriate . . . where the plaintiffs necessarily ha[d] access, without discovery, to . . . specific information from which to fashion a suitable complaint"); *Concentra Health Servs., Inc.*, 496 F.3d at 780 ("The rules do not require unnecessary detail, but neither do they promote vagueness or reward deliberate obfuscation. . . . A complaint should contain information that one *can* provide and that is clearly important . . . ."). *Compare Chepak v. Metro. Hosp.*, 555 F. App'x 74, 76 (2d Cir. 2014) (summary order) (vacating dismissal of EPA complaint where *pro se* plaintiff asserted she was paid less to do the "same job" as her male predecessor).

Given the foregoing analysis, the EEOC's pleadings cannot be said to contain "enough fact[s] to raise a *reasonable* expectation that discovery will reveal evidence of illegal[ity]." *See Twombly*, 550 U.S. at 556 (emphasis added). Nor do the EEOC's allegations, read as a whole and with every reasonable inference drawn in the EEOC's favor, suggest "more than a sheer possibility" that the Port Authority violated the EPA. *Iqbal*, 556 U.S. at 678; *see N.J. Carpenters Health Fund v. Royal Bank*

*of Scot. Grp., PLC*, 709 F.3d 109, 121 (2d Cir. 2013) ("[C]ourts may draw a reasonable inference of liability when the facts alleged are suggestive of, rather than merely consistent with, a finding of misconduct."). The EEOC has alleged, at most, that some female nonsupervisory attorneys were paid less than some male nonsupervisory attorneys at the Port Authority during the relevant period – and that, in other instances, the situation was reversed. The EEOC has not, however, plausibly pleaded that these pay differentials existed despite the attorneys' performance of "substantially equal" work, the only workplace ill addressed by the EPA. Without *any* nonconclusory allegations supporting such a claim, the district court did not err in determining that the EEOC's complaint was properly dismissed.[4]

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[4] In so ruling, we do not address the question whether the EEOC must name all claimants prior to suit or whether the EEOC must allege facts supporting that each claimant performed "substantially equal" work to a higher-paid co-worker of the opposite sex. We hold only that where, as here, a plaintiff fails to allege any nonconclusory facts from which to infer that a *single* claimant performed "substantially equal" work to a higher-paid co-worker of the opposite sex, the plaintiff has failed to state a plausible claim for relief under the EPA.

29