| |
|---|
| **Pierluissi v City of New York** |
| 2025 NY Slip Op 30984(U) |
| March 26, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 153439/2023 |
| Judge: Ariel D. Chesler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:　　**HON. ARIEL D. CHESLER**　　　　　　PART　　　　　　　　　**62M**

*Justice*

-------------------------------------------------------------------------------X

CARL PIERLUISSI,

　　　　　　　　　　　　　　　　Plaintiff,

　　　　　　　　　　- v -

CITY OF NEW YORK, JAMES FILLS, SASA MARIC

　　　　　　　　　　　　　　　　Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 153439/2023 |
| MOTION DATE | 11/17/2023 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23

were read on this motion to/for　　　　　　　　　DISMISSAL　　　　　　　　.

Upon the foregoing documents, it is

Plaintiff Carl Pierluissi brings this employment discrimination action against defendants the City of New York (the City), Sergeant James Fills (Fills) and Lieutenant Sasa Maric (Maric). Pursuant to both the New York State Human Rights Law (the NYSHRL) and the New York City Human Rights Law (the NYCHRL) plaintiff alleges: (1) discrimination on the basis of race; (2) hostile work environment; and (3) retaliation. Among other things, plaintiff seeks an award of promotion to the rank of detective; as well as compensatory and punitive damages.

Defendants now move, pursuant to CPLR 3211 (a) (7), for an order dismissing the complaint on the grounds that the pleading fails to state a cause of action.

Plaintiff cross-moves, pursuant to 22 NYCRR § 130-1.1, for an order imposing sanctions against the defendants for their allegedly unethical conduct.

For the reasons set forth below, defendant's motion to dismiss the complaint is denied. Plaintiff's cross-motion for sanctions is also denied.

**153439/2023　PIERLUISSI, CARL vs. CITY OF NEW YORK ET AL**
**Motion No. 001**

**Page 1 of 16**

[* 1]

**FACTS**

The following facts are taken from the complaint and are assumed to be true for the purposes of this motion (*Leon v Martinez*, 84 NY2d 83, 87 [1994]).

Plaintiff is an "American born" male "Hispanic of Puerto Rican descent" (complaint, ¶¶ 8, 24, 289). Plaintiff has been employed as a police officer with the NYPD since July 6, 2010 (*id.*, ¶ 19), and was transferred to the NYPD's Time Square Unit in either 2017 or 2018 (*id.*, ¶¶ 21, 28). Plaintiff's immediate supervisor at the Times Square Unit was non-party Sergeant Vincent Florenza until 2022 (*id.*, ¶¶ 48-51, 159, 209, 213).

Since his transfer, plaintiff generally claims that he has "suffered numerous adverse actions [solely] as a result of his race which includes but is not limited to denial of overtime, denial of promotion to detective, negative evaluations, and unfair discipline" (*id.*, ¶¶ 25, 246-247, 288-289, 293).

In the complaint, plaintiff describes several instances of the alleged discriminatory conduct on the part of Fills and Maric, who allegedly treated minority police officers noticeably worse than white officers (*id.*, ¶ 198). For instance, Fills would regularly state, in reference to the race and national origin of several minority police officers, that the NYPD did not want "these kinds of people" on the job, and that "next thing you know, the college education requirement will not be a factor, so the dept will have a bunch of dumb immigrants" (*id.*, ¶¶ 202-203).

Plaintiff also alleges specific instances of discrimination directed toward him. For example, on September 8, 2019, Fills approached plaintiff while he was on patrol and stated that "[y]our kind never listens ... [w]hat is it don't you understand? Do I need to tell you [i]n Spanish?" (*id.*, ¶¶ 36-42). Plaintiff claims that Fills then, "in a condescending manner[,] pointed across the street" before pushing plaintiff's shoulder and telling him to "hurry the fuck up" (*id.*, ¶ 43).

**153439/2023  PIERLUISSI, CARL vs. CITY OF NEW YORK ET AL**
**Motion No.  001**

**Page 2 of 16**

2 of 16

[* 2]

On September 26, 2019, non-party Sergeant Chowdhury allegedly approached him and asked why plaintiff did not salute a higher-ranking officer such as himself, called plaintiff an "idiot," threw plaintiff's memo book out of a vehicle window onto the ground, and then "refused to converse" with plaintiff (*id*., ¶¶ 61-68). Plaintiff further alleges that white officers were not ordered to salute Chowdhury, nor did they take it upon themselves to do so (*id*., ¶ 69).

On January 26, 2020, non-party Lieutenant Joseph Grasso asked plaintiff if he was a "goomba," to which plaintiff did not respond (*id*., ¶¶ 147-154).

Plaintiff claims that, on July 17, 2020, Fills told him that he "looked like shit," directed him to move a street vendor away from an area, told him that he was going to learn the hard away for complaining, and told him that he "better watch [his] back" (*id*., ¶¶ 190-192). On April 21, 2021, Fills allegedly told him that if he "[caught him] leaving [his] post, [Fills] [would] drop a [command discipline] on [his] ass" before calling him a "dumb spic" and waking away (*id*., ¶¶ 221-225).

Plaintiff alleges that he complained to his immediate supervisor, Sergeant Florenza (*id*., ¶¶ 48, 210-211). Plaintiff then claims that "[o]n one occasion, [he] asked Florenza [why] he has never intended to stop the discrimination," to which Florenza allegedly responded he was unable to "protect" plaintiff (*id*., ¶¶ 44-52). Plaintiff further claims that Florenza "was aware of the discriminatory treatment but failed to intervene" (*id*., ¶¶ 49, 52, 187, 208-212).

On November 7, 2019, the PBA held a meeting at Manhattan south police precinct regarding multiple complaints they received of discrimination, harassment, and bullying from Fills and Maric (*id*., ¶ 44). During this meeting, many minority police officers stated that the discrimination, harassment, and bullying by Fills, Maric and others had created a hostile work

153439/2023   PIERLUISSI, CARL vs. CITY OF NEW YORK ET AL
Motion No.  001

Page 3 of 16

3 of 16

[* 3]

environment for several years, and all expressed their collective opinion to have supervisors Fills and Maric transferred out to a different command (*id*., ¶¶ 54-56).

Plaintiff claims that, on January 9, 2020, he received a notification from a Sergeant Lee of "Manhattan South Investigations" to be interviewed regarding what plaintiff reported as the "bullying, harassment, and harassment that [p]laintiff and other minority officers were experiencing ... since February 17, 2019," at the hands of Fills and Maric (*id*., ¶¶ 120-125). Plaintiff claims that Lee then told him that "he was making a notification to the [NYPD's Equal Employment Opportunity Office]" (*id*., ¶¶ 120-125). Plaintiff claims that, thereafter, Sergeant Roberts took his "EEO complaint over the phone from ... [p]laintiff and other officers that were being harassed and discriminated against by ... Fills" (*see id*., ¶ 125).

On May 20, 2021, plaintiff filed a "second internal EEOC complaint of harassment and discrimination" against Fills "on behalf of the complainant" at One Police Plaza (*id*., ¶¶ 226-229). On July 21, 2021, plaintiff claims that he was served with disciplinary charges and specifications within two months of filing his second discrimination complaint for "working his seasonal job [at] the Parks Department while being employed at the NYPD" (*id*., ¶¶ 248-253). Plaintiff claims that, had he not filed a discrimination complaint, he would not have been prosecuted by the NYPD (*id*., ¶¶ 281-284). On December 30, 2021, plaintiff filed another discrimination complaint (*id*., ¶ 263).

Plaintiff claims that, in April 2022, the NYPD "refiled charges and specifications against" him (*id*., ¶ 269). These charges and specification asserted that plaintiff "work[ed] his seasonal job [at] the Parks Department while being employed at the NYPD" (*id*., ¶¶ 248-253).

On June 10, 2022, plaintiff entered into a settlement agreement with the "NYPD Department Advocates" related to the April 2022 specifications (*id*., ¶¶ 275-276). Although plaintiff was initially sentenced to "Dismissal Probation" – which is "the highest level of

**153439/2023  PIERLUISSI, CARL vs. CITY OF NEW YORK ET AL**                                        **Page 4 of 16**
  **Motion No.  001**

4 of 16

[* 4]

monitoring" – the "Police Commissioner found the penalty [that plaintiff had agreed to accept] to be too harsh" and reduced plaintiff's penalty (*id*., ¶¶ 276-280).  As a result, plaintiff was ultimately penalized with "Level II Performance Monitoring," required to pay the City back $10,800.00, and docketed 55 days' pay (*id*., ¶¶ 276-280).

Plaintiff also alleges that, on June 26, 2020, after completing the interview process for a position in the NYPD's Harbor Unit, he was not one of the officers selected purportedly only "due to his race" (*id*., ¶¶ 173-182).

Plaintiff generally alleges that, at various timeframes ranging between 2019 and 2021, defendants would regularly make offensive comments at roll calls (*id*., ¶¶ 194- 197), assign overtime to officers based exclusively on their race (*id*,. ¶¶ 76, 111-116, 119, 214-220), give him "low" evaluations (*id*., ¶¶ 74, 89-93), "den[y] [him] ... all favorable conditions" (*id*., ¶ 298), give him more "disparate" assignments than his White colleagues (*id*., ¶¶ 75-95, 295), and give him less patrol hours per month than his White colleagues (*id*., ¶¶ 84-91).  Plaintiff claims that these factors all prevent him from earning income at the same level as his White colleagues, who all supposedly receive more "higher" evaluations (*id*., ¶¶ 89-96), and more overtime (*id*., ¶¶ 76, 111-116, 119, 214-220) than he does.  Plaintiff claims that his White colleagues include police officers James McHugh, Thomas Ketchum, Scott Carley, Jimmy Ferrazzo, and individuals named Paul, Henry, Sasso, Lancia, and Ramos, without providing last names for these  individuals (*id*., ¶¶ 64, 67, 90, 109, 117).  Plaintiff claims that his "minority" colleagues who have been "discriminated against" include police officers Jude Joseph, Alvin McKinney, Cavit Onder, William Bilbao, Mingwei Gao, Steve Juillet, Rachel Zamora, Edouard Merant, Wilkerson Pierre, Juna Delsalto, James Lebron, and Miguel Brand (*id*., ¶¶ 234-236).

**153439/2023   PIERLUISSI, CARL vs. CITY OF NEW YORK ET AL**
**Page 5 of 16**
  **Motion No.  001**

[* 5]

5 of 16

Finally, plaintiff alleges that, after he reported the alleged discriminatory conduct, he was retaliated against by the assignment of certain tours without a police vehicle (*id*., ¶¶ 130-131), denial of a promotion to the Harbor Unit (*id*., ¶ 180), denial of overtime (¶¶ 214-219), disciplinary charges (*id*., ¶¶ 248-249), and being placed on modified duty (*id*., ¶ 264).

## DISCUSSION

**Defendants' Motion to Dismiss**

"'On a motion to dismiss for failure to state a cause of action under CPLR 3211 (a) (7), [the Court must] accept the facts as alleged in the complaint as true, accord plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory'" (*Connaughton v Chipotle Mexican Grill, Inc.*, 29 NY3d 137, 141 [2017] [citation omitted]). The complaint should be liberally construed, and the allegations contained therein are given the benefit of every possible inference (*Leon*, 84 NY2d at 87).

As is relevant here, plaintiff's employment discrimination, hostile work environment, and retaliation claims under both the NYSHRL and the NYCHRL are "generally reviewed under notice pleading standards," and therefore, "a plaintiff alleging employment discrimination need not plead specific facts establishing a prima case of discrimination but need only give fair notice of the nature of the claim and its grounds" (*Vig v New York Hairspray Co., L.P.*, 67 AD3d 140, 145 [1st Dept 2009] [citation omitted, quotation marks and alteration omitted]). Further, "while a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed" (*EEOC v Port Auth. of N.Y. & N.J.*, 768 F3d 247, 254 [2d Cir 2014] [citation omitted, quotation marks and alteration omitted]; *see also Yan v Ziba Mode Inc.*, 2016 WL 1276456, * 3 [SD NY 2016] ["The elements

**153439/2023 PIERLUISSI, CARL vs. CITY OF NEW YORK ET AL**
**Motion No. 001**

**Page 6 of 16**

6 of 16

[* 6]

of a prima facie case are 'an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible'" [citation omitted]).

Construing the claims in the generous matter to which they are entitled, this court finds that the allegations set forth in the complaint are facially sufficient to state causes of action for employment discrimination, hostile work environment and retaliation under both the NYSHRL and the NYCHRL.

### 1. Race Discrimination

Both the NYSHRL and NYCHRL make it unlawful for an employer to refuse to hire or to discriminate against an individual in compensation or in terms, conditions, or privileges of employment because of that person's race or national origin (*see* Executive Law § 296 [1] [a]; Administrative Code of City of NY § 8-107 [1] [a]). Under the NYCHRL, it is an unlawful discriminatory practice for an "employer" to discriminate against "any person ... in compensation or in terms, conditions or privileges of employment" (Administrative Code, § 8-107 [1] [a]).

To support a prima facie case of employment discrimination under both the NYSHRL and the NYCHRL, a plaintiff generally has the initial burden of demonstrating: (1) that she or he is a member of a protected class; (2) that she or he was qualified to hold the position; (3) that she or he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination (*see Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 6 NY3d 265, 270 [2006]; *accord Ayers v Bloomberg, L.P.*, 203 AD3d 872, 874 [2d Dept 2022]).

Under the NYSHRL, "[a]n adverse employment action requires a materially adverse change in the terms and conditions of employment" and "must be more disruptive than a mere

**153439/2023   PIERLUISSI, CARL vs. CITY OF NEW YORK ET AL**
**Motion No.  001**

Page 7 of 16

7 of 16

inconvenience or an alteration of job responsibilities" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 306 [2004] [citation and quotation marks omitted]).

The NYCHRL does not require a plaintiff to "establish that she or he was subjected to a 'materially adverse' change to terms and conditions and employment, but only that she or he was subject to an unfavorable change, or treated less well than other employees on the basis of a protected characteristic" (*Golston-Green v City of New York*, 184 AD3d 24, 38 [2d Dept 2020]). In other words, a plaintiff need only show that she or he was treated differently from others in a way that was more than "petty slights or trivial inconveniences" (*Williams v New York City Hous. Auth.*, 61 AD3d 62, 80 [1st Dept 2009]). Nonetheless, the NYCHRL is not a "general civility code," and plaintiff must still demonstrate "that the conduct is caused by a discriminatory motive" (*Mihalik v Credit Agricole Cheuvreux N. Am., Inc.*, 715 F3d 102, 110 [2d Cir 2013]).

Plaintiff has sufficiently pleaded a discrimination cause of action under both the NYSHRL and the NYCHRL. There is no dispute that as a Hispanic, plaintiff is a member of a protected class due to either his race or national origin (*Village of Freeport v Barrella*, 815 F3d 594, 607 [2d Cir 2016]; *see e.g. Vega v Hempstead U.F.S.D.*, 801 F3d 72, 88-89 [2d Cir 2015] [plaintiff's Hispanic ethnicity was a motivating factor in the employment decisions]).

Plaintiff has also sufficiently alleged that he is qualified for the promotions that he claims he was denied due to his race. In the complaint, plaintiff sets forth his multiple awards, merits, and citations based on his performance and involvement as a rescue worker during the 911 World Trade Center attacks, as well as his high performance reviews prior to his transfer to the Times Square Unit (*see* complaint, ¶¶ 20-22, 29).

In addition, plaintiff alleges that, as a result of defendants' racial animus, he was denied promotions, suffered lost past and future wages, lost career, and business opportunities, suffered

153439/2023   PIERLUISSI, CARL vs. CITY OF NEW YORK ET AL
Page 8 of 16
Motion No. 001

8 of 16

damage to his name and reputation, and was denied overtime (*see id.*, ¶¶ 77, 87,99, and 102). This court finds that these allegations are sufficient to plead the adverse employment action element (*see Forrest*, 3 NY3d at 306 [holding that "'(a) materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities or other indices ... unique to a particular situation'"] [citation omitted]). As is relevant to the more lenient NYCHRL standard, this court finds that plaintiff also sufficiently alleges that he was treated less well than his white colleagues as a result of his race. More specifically, plaintiff sets forth examples of white officers who are similarly situated to plaintiff, but who, unlike plaintiff, were afforded the opportunity to be promoted, and received greater overtime as well as positive evaluations, which result in the ability to transfer to specialized and more lucrative units (*see* complaint, ¶¶ 77, 79).

The court rejects defendants' argument that plaintiff fails to sufficiently allege that he was subjected to adverse employment actions under circumstances that give rise to an inference of discrimination. Defendants point to plaintiff's allegations that he was asked if he needed something told to him in Spanish (complaint ¶¶ 36-42), was asked if he was a "goomba" (*id,.* ¶¶ 147-154), and was called a "dumb spic" (*id.,* ¶¶ 221-225), as well as Fills' statement, directed to plaintiff, that "[y]our kind never listens ... [w]hat is it don't you understand? Do I need to tell you [i]n Spanish?" (*id.*, ¶¶ 36-42). Defendants argue that these remarks are no more than "petty slights and trivial inconveniences," which do not constitute discrimination.

This court disagrees, as on their face, a reasonable person might find that these remarks "have a negative racial connotation" (*Wooten v Reconstruction Home, Inc.*, 2005 WL 1502149, * 11, 2005 US Dist LEXIS 44738, at * 32 [ND NY 2005]; *see also Winston v Verizon Servs. Corp.*, 633

153439/2023  PIERLUISSI, CARL vs. CITY OF NEW YORK ET AL                    Page 9 of 16
Motion No.  001

9 of 16

F Supp 2d 42, 53 [SD NY 2009] [finding that a statement such as "you people cannot do anything right" could permit a reasonable jury to find discriminatory motivation"]). Additionally, it is important to acknowledge that a greater context may exist where if combined with certain comments or phrases could lead a reasonable jury to draw an inference of discrimination (see *Whitehurst v. 230 Fifth, Inc.,* 998 F Supp 2d 33, 253 [SDNY 2014]*; Griffin v. Ambika Corp.,* 103 F.Supp.2d 297, 314 [SDNY 2000]; *Cadet-Legros v New York Univ. Hosp. Ctr.,* 135 AD3d 196, 204 [1st Dept 2015]["It is true that discrimination seldom announces itself openly"]).

### 2. Hostile Work Environment

To establish a discrimination cause of action under the NYSHRL under a hostile work environment theory, a plaintiff must demonstrate that the plaintiff was subject to "'inferior terms, conditions or privileges of employment because of the individual's membership'" in a protected category (*Elco v Aguiar*, 226 AD3d 649, 651 [2d Dept 2024] [citation omitted]; *see also Golston-Green v* 184 AD3d at 41 n 3 ["(The NYSHRL) was amended to provide that harassment is actionable 'regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims,' and the plaintiff need demonstrate only that she or he was subjected to 'inferior terms, conditions or privileges of employment'," citing Executive Law § 296 (1) (h)]).

"'[U]nder the [NYCHRL], liability for a harassment/hostile work environment claim is proved where a person provides that he or she was treated less well than other employees because of the relevant characteristic'" (*Benitez v Jamaica Hosp. Med. Ctr.*, 230 AD3d 1284, 1285 [2d Dept 2024] [citation omitted]; *see also Russell v New York Univ.*, 204 AD3d 577, 593 [1st Dept 2022]). "In other words, all that is required to sustain a NYCHRL "hostile work environment claim" is "unequal treatment" based upon membership in a protected class .... Questions of "severity" or

"pervasiveness" go to damages only—not to liability" (*Fattoruso v Hilton Grand Vacations Co., LLC*, 873 F Supp 2d 569, 578 [SD NY 2012]), *affd* 525 F Appx 26 [2d Cir 2013]).

Plaintiff has sufficiently pleaded a discrimination cause of action under a hostile work environment theory under both NYSHRL and the NYCHRL because he has alleged that he was subjected to inferior terms, conditions or privileges of employment because of his race/nationality, as well as being treated less well than similarly situated white officers, due to his race. Specifically, he alleges that he has lost approximately $30,000 in lost income a year compared to his fellow white officers, because he was denied overtime, as well promotions to more lucrative positions, because of his race (*see* complaint, ¶¶ 76, 268 and 288). Plaintiff sets forth specific examples of white officers who are similarly situated to plaintiff, performing at or below his level, who were, unlike him, afforded the opportunity to be promoted, received greater overtime, and received positive evaluations which resulted in the ability to transfer to specialized and more lucrative units (*see id.*, 77, 79, 90, 1-4-107)

Thus, plaintiff has sufficiently stated facts that could support a finding of a hostile work environment under both statutes (*see Elco*, 226 AD3d at 651 [finding that the plaintiff stated a cause of action under the NYSHRL, "as her evidentiary submissions and allegations in the complaint demonstrated that her superior officers subjected her to inferior employment conditions as a result of her [protected characteristic"]; *Alshami v City University of New York*, 203 AD3d 592, 592 [1st Dept 2022] ["Plaintiff has also stated a cause of action for hostile work environment, as his coworker's multiple derogatory remarks about Yemenis, sometimes made in the presence of plaintiff's supervisors, along with the allegedly unfounded write-ups, unfavorable assignments, and denial of a promotion, were sufficiently severe and pervasive to support that cause of action"]; *Kwong v City of New York*, 204 AD3d 422, 445 [1st Dept 2022] [finding hostile work environment

153439/2023   PIERLUISSI, CARL vs. CITY OF NEW YORK ET AL
Motion No.  001

Page 11 of 16

11 of 16

claim under the NYCHRL stated a claim because, "[a]lthough most of the incidents of which plaintiff complains were relatively minor, at least the repeated mocking of plaintiff's accent and pretending not to understand him, if true, could affect his ability to do his job and create an abusive working environment"]).

### 3. Retaliation

Under the NYSHRL, "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article" (Executive Law § 296 [7]). To establish a claim for retaliation under the NYSHRL, a plaintiff "must show that (1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 312–13 [2004]; *accord Harrington v City of New York*, 157 AD3d 582, 585 [1st Dept 2018]; *see also Littlejohn v City of New York*, 795 F 3d 297, 316 [2d Cir 2015] [for a NYSHRL retaliation claim to survive a motion to dismiss, a plaintiff must "plausibly allege() a causal connection between the protected activities and the adverse employment action"]).

An employee engages in a "protected activity" by "opposing or complaining about unlawful discrimination" (*Forrest*, 3 NY3d at 313; *see also Davis-Bell v Columbia Univ*, 851 F Supp 2d 650, 682 [SDNY 2012]). Regarding the knowledge element of a retaliation claim, "nothing 'more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity'" (*Seemungal v New York State Dept. of Fin. Servs.*, 222 AD3d 467, 468 [1st Dept 2023] [citation omitted]).

153439/2023   PIERLUISSI, CARL vs. CITY OF NEW YORK ET AL
Motion No. 001

Page 12 of 16

12 of 16

Further, it has been held that "[a] causal connection between a protected activity and a negative employment outcome may be reasonably inferred from the passing of a brief period of time between the two" (*Gershenson v Local 52, I.A.T.S.E*, 2022 NY Slip Op 32546[U], ** 13-14 [Sup Ct, NY County 2021]; *see Ramos v Metro-North Commuter R.R.*, 194 AD3d 433, 434 [1st Dept 2021] ["The temporal proximity between plaintiff's EEOC complaint and the incident leading up to her termination, and her termination raise an issue of fact as to a causal connection, as these events occurred within weeks of each other"]).

Under the NYCHRL, it is unlawful to retaliate against an employee for opposing discriminatory practices (Administrative Code of City of NY § 8-107 [7] *see Nezaj v PS450 Bar & Rest.*, 719 F Supp 3d 318, 330 [SD NY 2024]). To establish a claim for retaliation under the NYCHRL, a complainant must show that (1) she engaged in a protected activity, (2) the employer was aware that she participated in such activity, (3) the employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct (*see Sanderson–Burgess v City of New York*, 173 AD3d 1233, 1235–1236 [2d Dept 2019]; *accord Parham v City of New York*, 84 Misc 3d 1204[A], 2024 NY Slip Op 51360[U], * 7 [Sup Ct, NY County 2024]). "Protected activity" refers to "actions taken to protest or oppose statutorily prohibited discrimination" (*Aspilaire v Wyeth Pharmaceuticals, Inc.*, 612 F Supp 2d 289, 308 [SD NY 2009]).

Administrative Code § 8-107 (7) should be construed "like other provisions of the City's Human Rights Law, broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (*Fletcher v Dakota, Inc.*, 99 AD3d 43, 51 [1st Dept 2012]). Furthermore, "the language of the City HRL does not permit any type of challenged conduct to be categorically rejected as nonactionable" (*Williams*, 61 AD3d at 71).

Despite defendants' contentions, plaintiff has adequately stated a cause of action for retaliation under both the NYSHRL and the NYCHRL. As to the first two elements of a retaliation cause of action, plaintiff alleges that he filed complaints about the allegedly discriminatory conduct in November 2019, May 2021, and December 2021, and that defendants Maric and Fills stated clearly that they were aware that plaintiff and other minority officers had filed complaints of discrimination against them, but that they did not care (complaint, ¶¶ 48-58, 120-125, 201, 210-211, 226-229). Plaintiff further alleges that the City was aware of the discrimination and the complaints filed by plaintiff, but did nothing to intervene (*id*., ¶¶ 244-245).

As to the third element, plaintiff also sufficiently pleaded that he suffered an adverse employment action pursuant to the NYSHRL, and experienced an employment action that was reasonably likely to deter him from engaging in the protected activity under the NYCHRL. Plaintiff alleges that, as a direct result of filing the discrimination complaints, he was subjected to adverse employment actions and numerous efforts to prevent further protected activity. He alleges that, immediately following these complaints, he was given punishment posts (*id*,. ¶ 61), denied police vehicles (*id*., ¶ 129), denied lucrative specialized units (*id*., ¶ 180), denied overtime (*id*., ¶ 214), received unwarranted discipline (*id*., ¶¶ 248, 254), and was denied promotion to detective (*id*., ¶ 25, 97-98).

Finally, plaintiff has adequately alleged a causal connection between the protected activity and the adverse action, which, he alleges, occurred "following plaintiff's complaint of discrimination" (*id*., ¶ 234).

Accordingly, defendants' motion to dismiss the complaint is denied.

**153439/2023   PIERLUISSI, CARL vs. CITY OF NEW YORK ET AL**
  **Motion No.  001**

**Page 14 of 16**

14 of 16

[* 14]

**Plaintiff's Cross-Motion for Sanctions**

In his cross-motion, plaintiff seeks sanctions against defendants on two grounds: (1) for incorrectly stating the proper legal standard for an adverse employment action; and (2) for failing to cite to a supposedly identical case filed against the same three defendants (*see Steeve Juillet v City of New York*, Index No. 156256/2021 [Sup Ct, NY County] [NYSCEF Doc No. 14]), which denied defendants' motion to dismiss. According to plaintiff, defendants' failure to cite to this allegedly controlling decision proves that defendants intended to mislead this Court.

Plaintiff's motion for sanctions is denied. Sanctions are only available for "frivolous conduct," narrowly defined as conduct that is "completely without merit in law and [that] cannot be supported by a reasonable argument for an extension, modification, or reversal of existing law" (22 NYCRR 130-1.1). The imposition of sanctions is not appropriate here. Plaintiff fails to point out which legal citation in defendants' memorandum is outdated. Moreover, although the *Juillet* decision did involve the same individual defendants, the plaintiff in that case is of a different race, and necessarily presented different factual allegations. In addition, *Juillet* is merely persuasive, and not binding authority (*see American Tr. Ins. Co. v Romero-Richiez*, 69 Misc 3d 1204[A], 2020 NY Slip Op 51181[U], * 3 [Sup Ct, NY County 2020] [finding that while plaintiff's "motion papers emphasize that numerous decisions rendered by other judges of Supreme Court, New York County" have found in plaintiff's favor, "(t)h(o)se decisions (are) not binding on this court"]).

As such, defendant's conduct in this action cannot be deemed to be frivolous (*see Rojas v Hazzard*, 171 AD3d 819, 820 [2d Dept 2019]; *Benishai v Benishai*, 83 AD3d 420, 420 [1st Dept 2011]; *Matter of L&M Bus Corp. v New York City Dept. of Educ.*, 83 AD3d 432, 433 [1st Dept 2011]).

The court has considered the remaining arguments, and finds them to be without merit.

Accordingly, it is

**ORDERED**, that the motion to dismiss is denied, and defendants are directed to serve an answer to the complaint within 20 days after service of a copy of this order with notice of entry; and it is further

**ORDERED**, that plaintiff's cross-motion for sanctions is denied.

20250326163154ACHESLER1DC0FC386F434D35A608EDD21CB90D1D

**3/26/2025**
**DATE**

**ARIEL D. CHESLER, J.S.C.**

CHECK ONE:  ☐ CASE DISPOSED  ☒ NON-FINAL DISPOSITION
☐ GRANTED  ☒ DENIED  ☐ GRANTED IN PART  ☐ OTHER
APPLICATION:  ☐ SETTLE ORDER  ☐ SUBMIT ORDER
CHECK IF APPROPRIATE:  ☐ INCLUDES TRANSFER/REASSIGN  ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

153439/2023  PIERLUISSI, CARL vs. CITY OF NEW YORK ET AL
Motion No.  001
Page 16 of 16

16 of 16