# In the United States Court of Federal Claims

No. 23-1480

Filed: November 21, 2024

|  |  |
|---|---|
| PRISCILLA MICHELLE ALSTON, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

*Priscilla Michelle Alston*, *pro se*, Washington, D.C., for plaintiff.

*Isabelle Aubrun*, U.S. Department of Justice, Civil Division, Washington, D.C., for defendant.

**OPINION AND ORDER**

***SMITH*, Senior Judge**

Before the court is defendant the United States of America's Motion to Dismiss. *See generally* Defendant's Motion to Dismiss, ECF No. 28 [hereinafter Def.'s Mot. to Dismiss]. *Pro se* plaintiff, Priscilla Michelle Alston, a female, alleges that the Court Services and Offender Supervision Agency ("CSOSA") violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1), amendment to the Fair Labor Standards Act by paying her substantially lower wages on account of her sex. *See generally* Plaintiff's Transfer Complaint, ECF No. 24 [hereinafter Transfer Compl.]. Specifically, Ms. Alston alleges she performed equal work as her male counterpart, Dwight Estrill, yet is paid substantially less—because his position is classified as General Schedule Grade 14 ("GS-14") and her position is General Schedule Grade 12 ("GS-12").[1] *Id.* at 7, 9–11. Plaintiff seeks back pay as well as punitive damages. *Id.* at 7.

In its Motion to Dismiss, defendant argues that Ms. Alston has failed to allege facts tending to show a plausible violation of the EPA. *See generally* Def.'s Mot. to Dismiss. Defendant further argues that even if Ms. Alston is entitled to damages, the EPA's two-year statute of limitations bars any claims accruing prior to November 29, 2020. *See id.* at 12. Ms. Alston counters that her Complaint has established a *prima facie* EPA case, and that the appliable limitations period is three years because CSOSA violated the EPA's willfully by "fail[ing] to make an adequate inquiry" into its compliance. *See* Plaintiff's Response in Opposition to

---

[1] "The General Schedule (GS) is a worldwide pay system that covers more than 1.5 million employees. . . The GS pay schedule has 15 grades and 10 steps in each grade covering more than 400 occupations. Pay varies by geographic location." U.S. Off. of Pers. Mgmt., *General Schedule Pay Rates,* https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/fact-sheets/#url=General-Schedule (last visited November 21, 2024).

Defendant's Motion to Dismiss, ECF No. 32, at 13–14, [hereinafter Pl.'s Opp'n]; 29 U.S.C. § 255(a). In its Reply, defendant argues that Ms. Alston failed to allege any violation of the EPA by CSOSA, less still a willful violation. *See* Defendant's Reply in Support of Defendant's Motion to Dismiss, ECF No. 35 [hereinafter Def.'s Reply].

After careful review, the Court finds that Ms. Alston's Complaint contains sufficient factual content to plausibly allege that CSOSA violated the EPA. However, Ms. Alston's Complaint, as well as the additional assertions made in her Response, fail to plausibly allege CSOSA acted willfully in doing so. Therefore, her claims are dismissed to the extent that they accrued after November 29, 2020. The Court also concludes that it lacks jurisdiction over Ms. Alston's request for punitive damages, and accordingly dismisses that aspect of her claim as well. For the reasons below, the defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.**

## I.     Background

### A.     Factual History[2]

In 1998, Ms. Alston began working at CSOSA as a General Schedule Grade 9 Community Supervision Officer. *See* Transfer Compl. at 9. By 2010, she had been promoted to a GS-12 Management Analyst. *See id.* In June 2010, Ms. Alston and Mr. Estrill began working together as Management Analysts. *See id.* In 2013, while Mr. Estrill was promoted to a GS-14 Management Analyst, Ms. Alston remained a GS-12 Management Analyst. *See id.* In August 2015, seeking to end this pay differential, Ms. Alston contacted CSOSA's Human Resources Department ("HR") to discuss the possibility of a grade change to her position. *See* Pl.'s Opp'n at 13.

In 2017, Ms. Alston and Mr. Estrill were transferred together to their present positions as Management Analysts on the Business Analytics Team in the Agency's Office of Community Supervision and Intervention ("OCSIS"). *See* Transfer Compl. at 9. Ms. Alston alleges the discriminatory conduct began at this time. *See id.* at 5, 9. Specifically, she alleges that the pay differential between Ms. Alston and Mr. Estrill rose to the level of discrimination because, from 2017 onward, "there [had been] little to no distinction between [Ms. Alston's] and [Mr.] Estrill's work duties, tasks[,] and responsibilities." *Id.* at 10. Although Ms. Alston acknowledges that she and Mr. Estrill have different titles,[3] she alleges there is much crossover between their job functions on their small team. *See id.* at 9–11. For instance, workplace correspondence shows instances when Ms. Alston and Mr. Estrill are required to work on the same matters, *see, e.g.*, *id.*, Ex. 2 at 1–11; *id.* at 9–10; when Ms. Alston and Mr. Estrill are required to transfer assignments, *see, e.g.*, *id.*, Ex. 4 at 1–7; and when Ms. Alston and Mr. Estrill are generally required to perform tasks that, according to a colleague, are observably similar, *see, e.g.*, *id.*, Ex. 7 at 1 ("[T]here was

---

[2]      For purposes of resolving defendant's Motion to Dismiss, Ms. Alston's allegations are assumed to be true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3]      Ms. Alston lists Mr. Estrill's title as "Senior Management Analyst" in her filings, while also attaching documentation where Mr. Estrill's position is listed as "Management Analyst (Team Leader)." *See* Transfer Compl. at 9–11; *id.*, Ex. 6 at 1. The Court recognizes this difference but understands it to be immaterial as both are consistent with a higher GS scale rank. *See also* Def.'s Mot. to Dismiss at 9 n.7.

nothing apparent that would define a distinction between [Ms. Alston's] work and that of [Mr. Estrill].").  Moreover, the projects assigned to Ms. Alston and Mr. Estrill are not allocated between the two based on complexity, but rather current workload distribution.  *See* Oral Arg. 7:13–16; *see also* Transfer Compl., Ex. 2 at 2, 4; *id.*, Ex. 4 (various requests addressed to both Ms. Alston and Mr. Estrill).

On July 19, 2017, HR finally provided an answer to her 2015 inquiry, informing Ms. Alston that she would need to compete for a higher GS level and that her current position cannot be upgraded if she does not fulfil competition requirements.  *See* Pl.'s Opp'n at 13; *id.*, Ex. 3 at 1.

Since December 2021, both Ms. Alston and Mr. Estrill have reported to Lorenzo Harris, who is a GS-14 with the title of "Supervisory Management and Program Analyst."  *See* Transfer Compl. at 10.  On August 31, 2022, as her supervisor, Mr. Harris conducted Ms. Alston's annual performance evaluation.  *See id.*, Ex. 3.  In these reviews, Ms. Alston and Mr. Estrill are evaluated under the same four criteria with the only difference being in the fourth factor.  *See id.*, Ex. 3 at 7 (evaluating Ms. Alston for providing "Program and Operations Management Support"); *id.*, Ex. 6 at 9 (evaluating Mr. Estrill for "Program and Operations Management").

In 2022, Ms. Alston filed a request for a desk audit by HR staff related to reviewing the classification of her role.  *See* Pl.'s Opp'n at 13.  This audit resulted in no change to her position's GS level.  *See id.* at 13–14.  She then initiated this lawsuit.

## B. Procedural History

On November 29, 2022, Ms. Alston filed a Complaint with the United States District Court for the District of Columbia against CSOSA and the Deputy Associate Director of OCSIS, alleging discrimination in violation of Title VII of the Civil Rights Act and the EPA.  *See generally* Complaint for Employment Discrimination, ECF No. 1.  On June 27, 2023, that court dismissed Ms. Alston's Title VII claim and transferred her EPA claim to this Court.  *See* District Court for the District Court of Columbia Memorandum Opinion, ECF No. 17; Transfer Compl., Ex. 1 at 7.

On August 30, 2023, Ms. Alston filed a transfer complaint with this Court.  *See generally* Transfer Compl.  The complaint requests back pay in the amount of $371,198.00 for the difference in salary between a GS-12 and GS-14 position from 2017 to 2023 as well as any punitive damages that the Court deems just.  *See id.* at 7.  On December 15, 2023, defendant moved for the Court to dismiss Ms. Alston's entire complaint for failure to state a claim pursuant to RCFC 12(b)(6), and in the alternative, to dismiss Ms. Alston's EPA claims accruing prior to November 29, 2020, for lack of jurisdiction.  *See* Def.'s Mot. to Dismiss at 1.  On February 7, 2024, Ms. Alston filed a Response in opposition to Defendant's Motion to Dismiss.  *See generally* Pl.'s Opp'n.  On March 15, 2024, defendant filed a Reply in support of its motion.  *See generally* Def.'s Reply.  On June 5, 2024, the Court held oral argument on the parties' briefing. *See generally* Oral Argument, ECF No. 37 [hereinafter Oral Arg.].  The Court now issues its decision.

## II.    Standard of Review

### A.    Subject Matter Jurisdiction

The Tucker Act defines the Court's jurisdiction, allowing the Court "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of any Executive Department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Fair Labor Standards Act—of which the EPA is a part—is a money-mandating statute conferring jurisdiction to the Court. *See Metzinger v. Dep't of Veterans Affairs*, 20 F.4th 778, 781 (Fed. Cir. 2021).

### B.    Failure to State a Claim

When evaluating a motion to dismiss for failure to state a claim, the Court must accept the complaint's well-pled factual allegations as true and make all "reasonable inferences" in favor of the plaintiff. *Beberman v. United States*, No. 17-179C, 2024 WL 1340204, at *2 (Fed. Cl. Mar. 29, 2024) (quoting *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1328 (Fed. Cir. 2006)). To avoid dismissal, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), meaning that the complaint's allegations must contain enough facts for the court to reasonably infer that the defendant could be liable for the alleged misconduct,[4] *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That said, while the Court's review focuses on the complaint itself, it may consider materials referenced or incorporated in the complaint "because [those] exhibits constitute a part of the complaint." *Martin v. United States*, 96 Fed. Cl. 627, 629 (2011) (citing R. Ct. Fed. Cl. 10(c)).

## III.    Discussion

The EPA protects equal pay for equal work, not simply equal pay for equal job titles. *See, e.g.*, *Santiago v. United States*, 107 Fed. Cl. 154, 161 (2012). Focusing on Ms. Alston and Mr. Estrill's "actual work," when assessing whether their respective positions are "substantially equal" under the terms of the EPA, determines whether Ms. Alston's allegations provide enough factual backing for both defendant and the Court to discern a plausible EPA claim. *Id.* To be sure, as defendant insists, Ms. Alston and Mr. Estrill possess different job titles and even different job descriptions. But titles and descriptions, while informative, are not dispositive for an EPA analysis. Rather, "'job content and not job title or description' . . . is *the* central concern of an EPA claim." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 255 (2d Cir. 2014) (emphasis added) (quoting *Tomka v. Selier Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995)). Here, Ms. Alston's allegations are sufficient to state a claim that, despite their respective job titles or job descriptions, she and Mr. Estrill perform substantially equal work. *Cf. Ellison v. United States*, 25 Cl. Ct. 481, 494 n.23 (1992) (assuming that job titles and descriptions are dispositive in an EPA analysis is belied by proof "that actual responsibilities would, to some extent, conform to a job description.").

---

[4]    The standard is somewhat relaxed for *pro se* plaintiffs, like Ms. Alston, but she must still allege a plausible claim. *See Philbert v. United States*, 141 Fed. Cl. 235, 239 (2019) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

The Court therefore holds that—although it is doubtful her claims would, at present, survive a higher burden—Ms. Alston's allegations plausibly allege that CSOSA violated the EPA. However, because no allegation sufficiently represents that CSOSA acted willfully, her claims are subject to the two-year statute of limitations under 29 U.S.C. § 255(a), thus requiring the Court to dismiss those claims that accrue after November 29, 2020. Finally, the Court does not possess the ability to provide punitive damages, thereby requiring dismissal for that form of relief.

### A.      Ms. Alston Plausibly Alleges a Violation of the EPA.

Surviving dismissal of an EPA claim requires Ms. Alston to satisfy a simple test: Did she plausibly and factually allege that she was paid less than her counterpart, Mr. Estrill, for work in a position requiring "substantially similar" skill, effort, and responsibility? *Branch v. United States*, 101 Fed. Cl. 411, 414 (2011); *see* 29 U.S.C. § 206(d)(1); *see, e.g.*, *Moore v. United States*, 66 F.4th 991, 996 (Fed. Cir. 2023) (*en banc* in relevant part) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). Crucially, substantial similarity focuses on the "work that [the plaintiff and the comparator] actually perform." *Santiago*, 107 Fed. Cl. at 161. Therefore, when answering whether a position's performance's skill, effort, and responsibility are substantially similar, the Court looks to a position's "primary duties" that Ms. Alston and Mr. Estrill performed on a day-to-day basis—rather than focusing on "insubstantial or minor differences," like job titles or even generalized job descriptions—to determine the viability of an EPA claim. *Spellers v. United States*, 157 Fed. Cl. 171, 176 (2021); *see Branch*, 101 Fed. Cl. at 414; *Ellison*, 25 Cl. Ct. at 486–87; *see also Santiago*, 107 Fed. Cl. at 161 ("The relevant issue, in other words, is not the name under which the position was classified but rather the work that was actually performed.") (citing *Usery v. Allegheny Cty. Inst. Dist.*, 544 F.2d 148, 153 n.4 (3d Cir. 1976)). Often, if the EPA claimant and the comparator have "fungible" positions, as evidenced through their primary duties, it is assumed that the claimant and the comparator's positions are substantially similar in skill, effort, and responsibility to support a *prima facie* case under the EPA. *See Allison v. United States*, 39 Fed. Cl. 471, 475 (1997); *accord Beck-Wilson v. Principi*, 441 F.3d 353, 360 (6th Cir. 2006) ("We agree with the Court of Federal Claims that evidence that the positions being compared are fungible can support a *prima facie* case under the EPA." (emphasis added)).

Put together, Ms. Alston's complaint and its attached exhibits plead facts that easily satisfy the bar for stating a claim under the EPA. Ms. Alston correctly roots her claims in the work "actually performed" by her and her comparator, instead of relying on generalized job titles or job descriptions. She explains that she frequently collaborates on tasks with Mr. Estrill, and they interchangeably accept projects from leadership. These allegations tend to show that the individuals' primary duties are fungible. *Santiago*, 107 Fed. Cl. at 161; *Allison*, 39 Fed. Cl. at 475; *see generally* Transfer Compl. For instance, Ms. Alston and Mr. Estrill are required to work on the same matters, *see, e.g.*, Transfer Compl., Ex. 2 at 1–11; *id.* at 9–10 (alleging that Ms. Alston and Mr. Estrill's "day-to-day duties" include "working collaboratively and independently" with one another on "team tasks, projects and data requests from management and leadership."); are assumedly required to transfer assignments when either are on leave, *see, e.g.*, *id.*, Ex. 4 at 1–7; and are generally required to perform tasks that, according to a colleague, are observably similar, *see, e.g.*, *id.*, Ex. 7 at 1. Moreover, the projects assigned to Ms. Alston

and Mr. Estrill individually or separately are not allocated between the two based on complexity, but rather current workload distribution. *See* Oral Arg. 7:13–16; *see also* Transfer Compl., Ex. 2 at 2, 4; *id.*, Ex. 4 (various requests addressed to both Ms. Alston and Mr. Estrill). Seen wholistically and in a light favoring plaintiff, given Ms. Alston and Mr. Estrill appear frequently collaborate in tasks and other day-to-day duties, the Court reasonably infers both individuals' positions are substantially similar in their skill, effort, and responsibility to plausibly allege an EPA claim. *See Allison*, 39 Fed. Cl. at 475; *see also Beberman*, 2024 WL 1340204, at *2. Therefore, Ms. Alston has alleged a *prima facie* case under the EPA.

Despite recognizing that a workplace's daily reality establishes an EPA claim, defendant wishes the Court ignore this standard and give conclusive weight to inconsequential standardized differences, like job titles or even generalized job descriptions, over the daily CSOSA reality. *See* Def.'s Mot. to Dismiss at 9–11. The Court will not do so. Although job titles, position descriptions, and performance evaluation criteria can be instructive, the central concern is a job's reality. *Santiago*, 107 Fed. Cl. at 161; *EEOC*, 768 F.3d at 255 ("'job['s] content' . . . is *the* central concern." (emphasis added)) (quoting *Tomka*, 66 F.3d at 1310). Defendant's reliance to the contrary perfectly illustrates the absurdity of exclusively focusing on job titles and job descriptions over a workplace's actuality.

For instance, defendant insists that Mr. Estrill's "title [of Senior Management Analyst is] equally consistent with [his] leadership responsibilities" as defined in his job description. *See* Def.'s Mot. to Dismiss at 9 n.7; *see also* Pl.'s Opp'n at 9. But it is unclear how Mr. Estrill "leads" Ms. Alston. Indeed, from her allegations, Ms. Alston alleges Mr. Estrill has never provided input or rated her performance. *See* Transfer Compl. at 10; Oral Arg. 6:15–19. Rather, since December 2021, both Ms. Alston and Mr. Estrill have reported to Mr. Harris, who conducts both individuals' annual performance evaluations under very similar criteria. *See* Transfer Compl. at 10; *id.*, Ex. 3 at 7; *id.*, Ex. 6 at 9. It is therefore reasonable to infer from these allegations that Mr. Harris, instead of Mr. Estrill, is "responsible for leadership and management of the team as supervisor." *Id.* at 10; *id.*, Ex. 3 at 1–8 (GS-12 Performance Plan); *id.*, Ex. 6 at 1–9 (GS-14 Performance Plan).

Moreover, if the Court were to rely on the job descriptions provided by defendant, Ms. Alston would have *more* responsibilities than Mr. Estrill—despite defendant claiming that he supervises Ms. Alston. *See* Def.'s Mot. to Dismiss, Ex. A at 2–4 (Ms. Alston's GS-12 position description). Specifically, the GS-12 position description includes the following duties not present in Mr. Estrill's position description:

- Ms. Alston will "[i]nteract[] with development program peers and all levels of Library of Congress staff";
- Ms. Alston will "backstop overseas programs in one or more geographic regions";
- Ms. Alston will "[r]epresent[] [CSOSA's] interest[s] to external organizations, such as other . . . agencies, the World Bank, multilateral development banks, various U[nited ]N[ations] offices, the academic community, contractors, and other donors";
- Ms. Alston will "[p]erform[] analyses of complex foreign and domestic policy issues"; and
- Ms. Alston will "[a]dvise[] foreign aid officers on . . . [projects]."

*Id.* Ironically, if the Court were to accept defendant's argument that Mr. Estrill supervises Ms. Alston because he delegates tasks to her, the Court would have to simultaneously disregard defendant's job description argument. *See id.* at 10–11. Such contradictory arguments highlight the issue with relying solely on job titles and job descriptions. Non-contextual definitions of workplace expectations rarely line up with actual agency need. *Cf. EEOC*, 768 F.3d at 255.

The law is not an arcade claw machine that the Court—or any party, including defendant—can use to pick and choose its preferred legal prize. Context is key; the EPA's spirit finds job titles and descriptions are instructive, but they are only preliminary contextualization tools leading to a broader discussion on a plaintiff and a comparator's respective professional lives. *Id.* In this opening parlay, Ms. Alston properly understood the legal standard. Her EPA action is factually rooted in her professional day-to-day existence, not just on abstract job titles or descriptions. Thus, Ms. Alston has sufficiently alleged a *prima facia* EPA lawsuit although Ms. Alton's EPA claim, at present, might fail under a more strenuous burden. Accordingly, on this point, Defendant's Motion to Dismiss is denied.

### B.       Ms. Alston's Claims Accruing Prior to November 29, 2020, Are Time-Barred.

The EPA only allows claims "commenc[ing] within two years after the cause of action accrued," except that the limitations period is three years in cases involving "willful violation[s]." 29 U.S.C. § 255(a).[5] To plausibly allege a willful violation of the EPA, the plaintiff bears the heavy burden of showing that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Bull v. United States*, 479 F.3d 1365, 1379 (Fed. Cir. 2007) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). The Court agrees with defendant that Ms. Alston fails to meet her burden, thus any claim based on paychecks issued prior to November 29, 2020, is time-barred. *See* Pl.'s Opp'n at 13–14.

Ms. Alston alleges that the CSOSA acted willfully when its Human Resources Department "failed to make an adequate inquiry" into her pay deferential claims. *See id.* at 13 (citing *Angelo v. United States*, 57 Fed. Cl. 100 (2003)); *see also* 5 C.F.R. 551.104. But Ms. Alston never communicated to the CSOSA that the EPA was the basis for her requests to HR, and she cannot rely on a "presumed awareness of the applicability of the [EPA]." *See Santiago*, 107 Fed. Cl. at 160; Pl.'s Opp'n at 13–14, Ex. 3. Without proper notice of the potential EPA violation, CSOSA cannot make "an adequate inquiry" into the merits of a potential EPA violation and, therefore, cannot act willfully (read as knowingly) to violate the EPA. *See* Pl.'s Opp'n at 14; *Santiago*, 107 Fed. Cl. at 160. Even if CSOSA had notice of a possible EPA violation, willfulness requires more than an employer merely knowing that the EPA "was in the picture." *See Richland Shoe Co.*, 486 U.S. at 132. Unfair or even unreasonable actions by the HR staff do

---

[5]       The statute providing for the transfer of plaintiff's original action to this Court provides: "[T]he action or appeal shall proceed as if it had been filed . . . on the date upon which it was actually filed in . . . the court from which it is transferred." 28 U.S.C. § 1631. Therefore, this Court will regard Ms. Alston's complaint as having been filed on the November 29, 2022, for the purposes of determining the limitations period. *Accord* Def.'s Motion to Dismiss at 12.

not, as alleged, rise to the level of reckless disregard. *See Bull*, 479 F.3d at 1379 (citing *Richland Shoe Co.*, 486 U.S. at 135 n. 13); *Angelo*, 57 Fed. Cl. at 109. Therefore, by failing to properly allege a willful violation of the EPA, Ms. Alston's claims accruing before November 29, 2020, are barred by the EPA's two-year statute of limitations.

### C.     This Court Cannot Award Punitive Damages to Ms. Alston.

Ms. Alston seeks punitive damages for the alleged EPA violations. *See* Transfer Compl. at 7 ("I am entitled to punitive damages because the [A]gency was aware, but continued to deny me equal pay."). However, this Court lacks jurisdiction to award punitive damages. *See Jackson v. United States*, 664 F. App'x 922 (Fed. Cir. 2016) ("[I]t is well settled that the [United States Court of Federal Claims] lacks jurisdiction over . . . claims for punitive damages."). Thus, the Court dismisses Ms. Alston's prayer for punitive damages, meaning Ms. Alston's potential recovery is limited to back pay (*i.e.*, actual damages). 29 U.S.C. § 216(b); *see also* 29 U.S.C. § 260.

## IV.     Conclusion

For the reasons set forth above, the Court allows Ms. Alston's claim to proceed, but only to the extent that it accrued after November 29, 2020. The Court further dismisses Ms. Alston's request for punitive damages. Accordingly, defendant's Motion to Dismiss pursuant to RCFC 12(b)(6) is **GRANTED IN PART** and **DENIED IN PART**. The Court moreover cautions that past this juncture, evidence, not mere inuendo, will satisfy our legal standards for establishing an EPA claim.

Further, the parties **SHALL** file a joint status report on or before **January 2, 2025**, apprising the Court of a proposed discovery and summary judgment briefing schedule.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge